The Honorable David B. Haley State Senator, 4th District State Capitol Building, Room 140-N Topeka, Kansas 66612-1504
Dear Senator Haley:
As a follow-up to Attorney General Opinion No. 2001-7, you inquire how the Secretary for Housing and Urban Development (HUD) determines whether a local government receiving federal assistance as a designated empowerment zone/enterprise community (EZ/EC) is in compliance with federal regulations to enable low income families within the zone to become self-sufficient.
 BACKGROUND
An empowerment zone or enterprise community (EZ/EC) is an urban or agricultural area designated as by the Secretary of the U.S. Department of Housing and Urban Development (HUD) to receive federal assistance in order to promote the economic development of the low-income community by helping low-income families become self-sufficient and revitalizing the community. Federal regulations define how an EZ/EC is established and requires applicants for the federal assistance (whether a county, city, town, township or combination of these political subdivisions recognized by the Secretary) to submit for approval a strategic plan specifying how the local political subdivision will use the funds to achieve the requisite federal goals.[1] Your question refers to the purpose for which an impoverished area is designated as an empowerment zone (EZ) or an enterprise community (EC). Federal regulations provide that EZ/EC areas are to be established "to stimulate the creation of new jobs-empowering low-income persons and families receiving public assistance to become economically self-sufficient-and to promote revitalization of economically distressed areas."[2]
The local entity receiving federal funds must make certifications in the form of a strategic plan showing how the purposes are to be implemented in the designated area.[3] The strategic plan must be developed in accordance with four key principles, one of which deals with enabling low income families within the zone to become self sufficient. The third key principle states [the strategic plan will promote] "economic opportunity, including job creation within the community and throughout the region, entrepreneurial initiatives, small business expansion and training for jobs that offer upward mobility."[4]
It is clear from this third key principle that any strategic plan developed by the local government of an EZ/EC designated area must include programs directed not only at the creation of jobs for the low income members of the community, but also programs directed toward achieving entrepreneurial initiatives, small business expansions and jobs that specifically offer upward mobility. In evaluating a strategic plan for approval, HUD reviews the plans submitted in terms of the equally-weighted key principles that include providing economic opportunity. A strategic plan must address:
 "(1) The extent to which businesses, jobs, and entrepreneurship increase within the Zone or Community; (2) The extent to which residents will achieve a real economic stake in the Zone or Community; (3) The extent to which residents will be employed in the process of implementing the plans and in all phases of economic and community development; (4) The extent to which residents will be linked with employers and jobs throughout the entire region or metropolitan area, and the way in which residents will receive training, assistance, and family support to become economically self-sufficient . . . ."[5]
 HOW COMPLIANCE IS DETERMINED
In order to determine whether a particular EZ/EC is in compliance, HUD (or an impartial third party commissioned by HUD) is required to conduct "on site" periodic performance reviews to evaluate the progress of the strategic plan that was submitted and approved by HUD for the specific area.[6] The local government receiving the assistance is required to submit periodic reports to HUD which identify what actions have been taken to implement that particular strategic plan.[7] In other words, all strategic plans submitted for approval must adhere to the objectives set by the federal regulations, but each approved plan will allocate different amounts of money toward achieving each goal required by each of the four key principles. The Secretary determines whether an EZ/EC is in compliance with federal regulations that require the plan, as implemented, enable low income families within the zone to become self-sufficient. On the basis of the performance reviews, which identify what actions the local government has taken to implement a particular goal in their strategic plan, HUD determines whether the EZ/EC remains in good standing.[8] Each strategic plan for an approved EZ/EC must include a detailed plan with specific projects and programs and specific budgets allocated to achieve each of the goals required by the federal regulations.[9] The strategic plan of any EZ/EC is public information, obtainable from the local government or from HUD.[10]
If the Secretary finds that the local government has failed to make progress in implementing the strategic plan or has not "complied substantially" with the strategic plan, the Secretary may revoke the designation of an area as an EZ/EC.[11] Before doing so, the Secretary will issue a letter of warning advising that the failure to substantially comply will result in a revocation of the designation and that the federal assistance will be terminated and awarded to the next highest ranked applicant.[12]
In conclusion it is our opinion that HUD determines whether a local government receiving federal assistance as a designated EZ/EC is in compliance with federal regulations that require implementation of programs to enable low income families within the zone to become self-sufficient, based on regular evaluations of whether the specific EZ/EC is implementing the programs in their strategic plan that target the economic self-sufficiency of low income families.
Very truly yours,
 CARLA J. STOVALL Attorney General of Kansas
 Guen Easley Assistant Attorney General
CJS:JLM:GE:jm
[1] 24 C.F.R. § 597.102 and 598.110 (2000) (area requirements and eligibility requirements).
[2] 24 C.F.R. § 598.2 (2000); see 24 C.F.R. § 597.201 (for similar language).
[3] 24 C.F.R. § 597.200 and 598.205 (2000).
[4] 24 C.F.R. § 597.200 (2000) see 24 C.F.R. § 598.215 (for similar language).
[5] 24 C.F.R. § 597.201 (2000).
[6] 24 C.F.R. § 597.401, 598.420 (2000).
[7] 24 C.F.R. § 598.415 (2000).
[8] 24 C.F.R. § 597.402.
[9] 24 C.F.R. § 598.215 subsections (b)(3), (b)(4).
[10] 24 C.F.R. § 598.10 (2000).
[11] 24 C.F.R. § 597.403, 598.430 (2000).
[12] Ibid.